# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | | |
|---|---|---|
| **LEON ROBERTS, JR.** | * | **CIVIL ACTION NO.  14-0632** |
| | | |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| | | |
| **CAROLYN W. COLVIN, ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT & RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

## Background & Procedural History

Leon Roberts, Jr. protectively filed the instant applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income payments on March 9, 2012. (Tr. 144-153).  He alleged disability as of November 2, 2011, because of a ruptured colon with side effects, a claw finger, bipolar disorder, and kidney/lung damage.  (Tr. 180-181, 188).[1]  The state agency denied the claims at the initial stage of the administrative process.  (Tr. 51-82). Thereafter, Roberts requested and received a January 8, 2013, hearing before an Administrative Law Judge ("ALJ").  (Tr. 26-50).  However, in a January 29, 2013, written decision, the ALJ

---

[1]  He filed prior applications that were denied initially on May 14, 2008, and September 21, 2009, and not further appealed.  *See* Tr. 221.

determined that Roberts was not disabled under the Social Security Act, finding at step five of the sequential evaluation process that he was able to make an adjustment to work that exists in substantial numbers in the national economy.  (Tr. 9-21).  Roberts appealed the adverse decision to the Appeals Council.  Nonetheless, on January 31, 2014, the Appeals Council denied Roberts' request for review; thus the ALJ's decision became the final decision of the Commissioner.  (Tr. 1-3).

On March 24, 2014, Roberts sought review before this court.  He alleges the following errors,

(1)     the ALJ's residual functional capacity assessment is not supported by substantial evidence; and

(2)     the ALJ's step five determination is not "realistic."[1]

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards.  *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. at 401.  Substantial evidence lies somewhere between a scintilla and a preponderance.  *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).  A finding of no substantial

---

[1]  For future reference, counsel is reminded that memoranda should be double-spaced. *See* Scheduling Order [doc. # 10] and LR 10.1.

2

evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1)     An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2)     An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3)     An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4)     If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5)     If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001);  20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).  When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated.  *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).  If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis.  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

### ALJ's Findings

## I.     Steps One, Two, and Three

The ALJ determined at step one of the sequential evaluation process that Roberts had not engaged in substantial gainful activity during the relevant period.  (Tr. 14).  At step two, he found that he suffers severe impairments of bipolar I disorder; hemorrhoids; status post colon and bowel problems; status post hernia repair; status post facial surgery; and left hand problems.  (Tr. 14).  *Id*.  He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at

step three of the process.  (Tr. 17-18).

## II.   **Residual Functional Capacity**

The ALJ next determined that Roberts retained the residual functional capacity ("RFC") to perform sedentary work,[2] with frequent balancing, stopping, kneeling, crouching, crawling, and climbing ramps/stairs, but not ladders, ropes, or scaffolds; occasional handling and fingering with his non-dominant upper extremity.  (Tr. 18-19).  He also would perform best in unskilled work where interaction with co-workers and the public was merely incidental to the job performed.  *Id*.

## III.   <u>**Steps Four and Five**</u>

The ALJ concluded at step four of the sequential evaluation process that Roberts was unable to perform his past relevant work.  (Tr. 19-21).  Accordingly, he proceeded to step five. At this step, the ALJ determined that Roberts was a younger individual, with a limited education, and the ability to communicate in English.  *Id*.  Transferability of skills was not material to the determination of disability.  *Id*.  The ALJ then observed that given Roberts' vocational factors, and if he had an RFC that did not include any non-exertional limitations, then the Medical-Vocational Guidelines would direct a finding of not disabled.  20 C.F.R. § 404.1569; Rule 201.19, Table 1, Appendix 2, Subpart P, Regulations No. 4.

However, because Roberts' RFC *did* include non-exertional limitations, the ALJ

---

[2]  Sedentary work entails:

> . . . lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. 404.1567(a).

consulted a vocational expert ("VE") to determine whether, and to what extent his additional limitations eroded the occupational base for light work.  *Id*.  In response, the VE identified the representative job of parimutuel ticket checker, *Dictionary of Occupational Titles* ("DOT") Code # 219.587-010 that was consistent with the ALJ's RFC and Roberts' vocational profile.  (Tr. 19-21, 48).[3]

## <u>Analysis</u>

Plaintiff contends that the ALJ's RFC is flawed because it failed to account for his own uncontradicted testimony.  The court agrees.  In his decision, the ALJ discussed plaintiff's physical impairments, but discounted the significance of each because they did not prevent Roberts from performing his prior substantial gainful activity, i.e., work.  *See* Tr. 15-17.  Somewhat paradoxically, however, the ALJ determined that plaintiff's impairments prevented him from returning to his past relevant work.  (Tr. 19-20).

The ALJ also relied on a physical examination report from January 29, 2008,  issued by H. Dale Meade, M.D., in connection with plaintiff's prior disability application(s).  (Tr. 277-279).[4]  However, Dr. Meade examined plaintiff almost **four** years before the alleged disability onset date in this case.  Moreover, plaintiff alleged that his condition had deteriorated.  At the

---

[3]  The VE testified that there were 1,675,000 parimutuel ticket checker positions nationally and 25,000 positions regionally.  (Tr. 47-48).  This incidence of work constitutes a significant number of jobs in the "national economy."  42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and 10,000 nationally, constitute a significant number).

[4]  Meade noted that Roberts was able to flex the fourth and fifth digits on his left hand and could pick up coins with both hands.  *Id*.  Although Roberts' right hand was normal, his left hand strength was reduced.  *Id*.  In addition, his gait and station were both within normal limits.  *Id*.

hearing, Roberts testified that his eye had started to droop, and he was experiencing headaches. (Tr. 38-39). In addition, medical records reflect that on June 5, 2012, he twisted his knee, with resulting tenderness, effusion, and decreased range of motion, but negative "Drawer test." (Tr. 343). On September 21, 2012, Jimmy Coughran, M.D., wrote that Roberts had presented with complaints of knee pain one month earlier, and that he took pain medication twice per day. (Tr. 325). Plaintiff affirmed at the hearing that he could not sit for very long because he experienced right knee pain from a prior orthopedic surgery. (Tr. 40-41). In fact, he only could sit for about forty to sixty minutes before he began to have difficulty. (Tr. 43-44). Also, he only could stand and walk for "about 30 minutes or better" before he needed to elevate his leg. *Id.*

The ALJ recognized that there was no physical residual functional capacity determination by an agency physician. (Tr. 19). Hollis Rogers, M.D., a non-examining state agency physician, reviewed the record and opined that Roberts' "hemorrhoid physical" was non-severe. (Tr. 313-315). However, to the extent that Dr. Rogers was considering any impairment besides plaintiff's hemorrhoids, the ALJ implicitly rejected his opinion as he found that plaintiff's impairments were severe. Indeed, after Dr. Rogers issued his opinion, the state agency disability examiner noted that there was "insufficient information to evaluate [plaintiff's] other physical conditions (knee, lung problems, and hand problem) . . ." (Tr. 221-222).

The Commissioner argues, in brief, that plaintiff's treating medical providers did not assign any work-related functional limitations. (Comm'r Brief, pgs. 2-4). However, plaintiff no longer was working by the summer of 2012. Moreover, although Dr. Coughran's statement that Roberts was unable to work is not accorded any special significance under the regulations, it does confirm that Roberts' impairments caused significant limitations of functions that may or may not coincide with the ALJ's RFC. *See* 20 C.F.R. § 404.1527(e)(1); *Frank v. Barnhart*, 326 F.3d

618 (5th Cir. 2003).  The only other evidence regarding plaintiff's impairments and their effects was provided by plaintiff, and it is inconsistent with the ALJ's physical RFC.

In sum, no physician of record examined plaintiff's impairments and quantified their effects upon his ability to perform work-related activities for the period issue.  Instead, the ALJ autonomously divined plaintiff's RFC simply on the basis of his own assessment of the effects of plaintiff's physical impairments.

The court emphasizes that the lack of a medical source statement describing the types of work that the claimant is still capable of performing does not, in, and of itself, render the record incomplete.  *Ripley v. Chater*, 67 F.3d 552, 557-558 (5th Cir. 1995).  In *Ripley*, as here, the Commissioner argued that the medical evidence substantially supported the ALJ's decision.  *Ripley, supra*.  The Commissioner pointed to medical reports discussing the extent of plaintiff's injuries, including a four year history of back troubles.  *Id*.  However, without reports from qualified medical experts, the Fifth Circuit could not conclude that the evidence substantially supported the ALJ's residual functional capacity assessment because the court was unable to determine the "effects of [plaintiff's] conditions, no matter how 'small.'" *Id*.  The only evidence that described plaintiff's ability to work was plaintiff's own testimony, which, when read in proper context, failed to support the ALJ's residual functional capacity assessment.  *Id*.

The instant case is materially indistinguishable from *Ripley, supra*.  The record is devoid of a medical source statement that supports the ALJ's RFC.  Moreover, plaintiff's own testimony does not comport with the ALJ's residual functional capacity assessment.  (Tr. 40-45).  Under these circumstances, the court is compelled to find that the ALJ's assessment is not supported by substantial evidence.  *See Williams v. Astrue*, 2009 WL 4716027 (5th Cir. Dec. 10, 2009) (unpubl.) ("an ALJ may not rely on his own unsupported opinion as to the limitations presented

8

by the applicant's medical conditions"); *Ripley, supra* (substantial evidence lacking where: no medical assessment of claimant's residual functional capacity, and claimant's testimony was inconsistent with ALJ's assessment); *Butler v. Barnhart*, Case Number 03-31052 (5th Cir. 06/02/2004) (unpubl.) (in the absence of medical opinion or evidence establishing that the claimant could perform the requisite exertional demands, the ALJ's determination is not supported by substantial evidence).[5]

Because the foundation for the ALJ's step five determination was premised upon an RFC that is not supported by substantial evidence, the court further finds that the Commissioner's ultimate conclusion, that plaintiff is not disabled, also is not supported by substantial evidence.[6]

## Conclusion

For the foregoing reasons,

IT IS RECOMMENDED that the Commissioner's decision be REVERSED and REMANDED pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings

---

[5] The court reaches this decision without consideration of the additional medical evidence submitted by plaintiff to the court. The Commissioner may address this evidence upon remand.

[6] The courts have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. §405(g). When reversal is warranted, the matter is remanded with instructions to make an award only if the record enables the court to conclusively determine that the claimant is entitled to benefits. *See Ferguson v. Heckler*, 750 F.2d 503, 505 (5th Cir. 1985); *see also Rini v. Harris*, 615 F.2d 625, 627 (5th Cir.1980) (reversing and remanding with direction to enter judgment where the evidence was not substantial and the record clearly showed the claimant's right to benefits). The instant record is not so disposed. Plaintiff's RFC remains indeterminate. Further development of the record ultimately may support an RFC that does not compel a finding of disability.

consistent herewith.[7]

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen  (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 2nd day of April 2015.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE

---

[7]  Having determined that reversal and remand is required, the court need not consider plaintiff's additional arguments.